J-S19019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.L.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 159 MDA 2023 |

Appeal from the Decree Entered December 30, 2022
In the Court of Common Pleas of Huntingdon County Orphans' Court at
No(s):  2022-00012

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: JULY 25, 2023**

B.B. ("Mother") appeals from the decree terminating her parental rights as to her minor child, J.L.R. ("Child"). We affirm.

Huntington County Children's Services (the "Agency") became involved with the family in March 2021. Child, who was  five years old at the time, had been living with his maternal grandmother ("Maternal Grandmother") since infancy. N.T., 12/30/22, at 13. Maternal Grandmother was Child's legal guardian and primary caretaker. *Id.* at 3, 6. She was arrested for causing a house fire in which Child was present and she pled no contest to arson. *Id.* at 3, 24. There were also reports of ongoing sexual abuse of Child by Child's cousin in Maternal Grandmother's home. *Id.* at 3. Child was adjudicated dependent on April 5, 2021. Child was removed from Maternal Grandmother and was placed in a kinship foster home. *Id.* at 24.

On September 30, 2022, the Agency filed a petition for involuntary termination of Mother's parental rights. The court held a hearing on the petition on December 30, 2022.

At the hearing, the Agency presented the testimony of case worker Christi Shawley. Shawley testified that Mother's goals were to address her drug use, maintain stable housing, complete a parenting program, avail herself to services, and attend visitation. *Id.* at 26-27. Shawley stated that out of all her goals, Mother only completed the parenting program, albeit after the filing of the termination petition. *Id.* at 34-35. With respect to visitation, Shawley said that Mother had nine scheduled visits with Child during the life of the case, but she only attended one in-person visit and three virtual visits via Zoom. *Id.* at 29. Shawley testified that Mother's last in-person visit was in December 2021, over one year before the termination hearing. *Id.* Mother's visits were suspended by the court in March 2022 because Child did not want to see Mother and would become extremely upset after visits with her. *Id.* Shawley testified that after the Zoom visits, she had to call the foster mother to help her deescalate Child who was "overturning chairs, throwing things, screaming and yelling and kept saying that he doesn't want to see" Mother. *Id.*

Shawley further testified that Mother did not have stable housing. *Id.* at 32. She also stated that Mother had only sporadic contact with the Agency, and that there were periods of time where the Agency was unable to reach her or where she did not avail herself of the Agency's services. *Id.* at 32-33.

Shawley also testified that Mother tested positive for methamphetamines on March 23, 2022. *Id.* at 36. Lastly, Shawley testified that Child's foster parents are ready and willing to adopt him. *Id.* at 33.

The Agency also presented the testimony of Dr. Kristen Hennessey. Dr. Hennessey testified that she is a licensed psychologist specializing in the treatment of children with complex trauma and that Child had been under her care since April 2021. *Id.* at 2-3. Dr. Hennessey testified that Child was referred to her due to his exposure to the house fire and sexual abuse by his cousin. *Id.* at 3. Child also had a lot of trauma connected to Maternal Grandmother. *Id.* Dr. Hennessy stated that Mother has never been Child's primary caretaker and Child had lived with Maternal Grandmother since infancy. *Id.* at 13. Dr. Hennessey testified that Mother was not consistent with visits with Child. *Id.* She previously recommended suspending visits because when Child was on the way to his visits with Mother, he would be in "a state of crisis" and would become dangerous in the car en route to the visits. *Id.* at 6, 14. Dr. Hennessey testified that "the idea of having visits [with Mother] was horrible for him and would lead to symptoms." *Id.* at 14. She stated Child would feel unsafe if he lived with Mother because Child believed that Mother would take him to Maternal Grandmother's house, which "means being hurt." *Id.* 6-7, 13. Dr. Hennessey also testified that Child does not see Mother as his protector. *Id.* at 12-13. Dr. Hennessy said that Child told her that Mother witnessed episodes of his abuse and he also told Mother about the abuse. *Id.* at 13. Dr. Hennessey stated that Mother told her that she "was aware of the

things that were going on but that she didn't know what to do because she did not have custody." *Id.*

Dr. Hennessey further testified that Child does not have a bond with Mother, and they do not have a mother/child relationship. *Id.* at 7, 11. She said he barely speaks about Mother, and Mother is "not on his radar." *Id.* at 7. On the other hand, Dr. Hennessey stated that Child has a good bond with his foster parents, and he wants to continue to live with them. *Id.* at 8-9. Dr. Hennessey opined that Child would experience trauma if his bond with his foster parents was severed. *Id.* at 9. She stated that Child's mental health would be in a better position if Mother's parental rights were terminated. *Id.* at 10.

The Agency also presented the testimony of Maddie Sell. Sell testified that she is a therapist employed by Sara Jefferson, LCSW, and assists in completing parenting attachment assessments. *Id.* at 15. She stated that Mother completed approximately half of the testing required for her attachment assessment. *Id.* at 17. Sell testified that Mother did not complete the testing because Mother said she was going to test positive for Percocet and morphine. *Id.* Mother was not able to produce a prescription for those drugs. *Id.* at 21. Mother was a no-show at the rescheduled testing date and did not respond to Sell's attempts to reschedule the testing. *Id.* at 18, 20. Sell stated that Mother was not able to care for Child. *Id.* at 20. Sell testified that there is a "disengagement" by both Mother and Child in their relationship and Child does not refer to Mother as "mom" but rather refers to her by her first

name. *Id.* at 18, 19-20. Conversely, she stated that Child has a "great bond" with his foster mother and they have "a very natural sort of interaction." *Id.* at 19.

Mother did not appear at the termination hearing or produce any evidence.

After the hearing, the trial court found that the Agency proved by clear and convincing evidence that Mother's parental rights should be terminated under sections 2511(a)(5) and (8) and section 2511(b) of the Adoption Act. Mother filed a notice of appeal and raises the following issue:

> Whether the evidence was insufficient to support the termination of the parental rights of [Mother] as related to [Child] if the termination was premised, either in whole or in part, on, *inter alia*, purely hearsay evidence of continued drug abuse, and an incomplete attachment assessment?

Mother's Br. at 5.

We review an order involuntarily terminating parental rights for an abuse of discretion. *In re G.M.S.*, 193 A.3d 395, 399 (Pa.Super. 2018). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest

unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. *In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (citation omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

- 6 -

Here, the court found termination proper under sections 2511(a)(5) and (8), as well as under section 2511(b). As only one basis for termination under 2511(a) is necessary, we will focus on the court's termination of Mother's parental rights under section 2511(a)(8). That section provides that a parent's rights to a child may be terminated if:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

Section 2511(a)(8) "sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12-month period has been proven, the court "must next determine whether the conditions that led to the children's removal continue to exist." *Id.* "As a result, the relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009). "Termination under [s]ection 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa.Super. 2010).

Here, Child has been in placement since March 2021. Therefore, Child has been in care in excess of 12 months. We next focus our inquiry on whether the conditions that led to Child's removal continued to exist at the time the court terminated Mother's parental rights.

The court found that the conditions that existed at the time of Child's placement continued to exist at the time of the termination hearing. ***See*** Trial Court Decree, dated 12/30/22, at Conclusions of Law ¶ 4. The court found that Mother did not maintain sobriety or complete court-ordered drug and alcohol counseling, failed to complete a parenting program prior to the filing of the termination petition, failed to maintain stable housing, had not been cooperative with the Agency, and was inconsistent with visits with Child prior to visits being suspended. ***Id.*** at Findings of Fact ¶ 2. As a result, the court concluded that Mother failed to remedy the issues that necessitated Child's placement. ***Id.*** at Conclusions of Law ¶ 3.

We discern no abuse of discretion. The record supports the court's finding that the conditions that led to Child's removal continue to exist. Mother was never Child's primary caretaker nor ever parented Child in any significant way. Mother was sporadic with visits with Child and the visits caused Child so much distress that the court ordered that the visits be suspended. Although Mother eventually completed the parenting program,[1] she wholly failed to

_____

[1] Mother argues that the court erred by not considering the fact that she eventually completed the parenting program in November 2022, *(Footnote Continued Next Page)*

complete any of her other goals. The court's findings are supported by the record and it did not abuse its discretion in determining that the requirements of section 2511(a)(8) were satisfied.

In addition to generally arguing that the evidence was insufficient to support termination of her parental rights, Mother also argues that the court impermissibly relied on hearsay evidence of Mother's continued drug use and an incomplete attachment assessment. However, Mother concedes that these issues are waived since they were not raised in the trial court. *See* Mother's Br. at 21. We agree that the issues are waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"). We also note these specific issues were not included in Mother's Rule 1925(b) statement and we therefore find waiver on this additional basis. *See* Pa.R.A.P. 1925(b)(4)(vii).

We next determine whether termination was proper under section 2511(b). However, since Mother failed to present any argument concerning section 2511(b) in her brief, she waived any challenge related to that section. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa.Super. 2017).

---

approximately two months after the filing of the termination petition. Mother's Br. at 20, 25. Citing *In re Z.P.*, 994 A.2d at1121, she contends that a court "may consider post-petition efforts if the efforts were initiated before the filing of the termination petition and continued after the petition date." *Id.* at 25. However, the court cited many other factors in support of its decision to terminate Mother's parental rights. Moreover, the court did, in fact, hear testimony that Mother completed the program. N.T. at 34-35.

Even if Mother had preserved her challenge to section 2511(b), we would conclude that it lacked merit. Under section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. *See* 23 Pa.C.S.A. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** The trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." ***In re N.A.M.***, 33 A.3d 95, 103 (Pa.Super. 2011) (citation omitted).[2] The court must also examine any pre-adoptive home and any bond between the child and the foster parents. ***In re T.S.M.***, 71 A.3d at 268.

Here, there was ample evidence that Child has no bond with Mother and they do not have a parent-child relationship. Child calls Mother by her first name and Mother has never been a caregiver to Child. Child stated that he

---

[2] ***See also In the Interest of K.T.***, --- A.3d ----, Nos. 37 & 38 WAP 2022, 2023 WL 4092986, at *18 (Pa. filed June 21, 2023) (stating that in addition to determining whether the parental bond is necessary and beneficial to the child, "[t]he [s]ection 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care consistent with 42 Pa.C.S. § 6351(f)(9) and federal law [the Adoption and Safe Families Act of 1997], 42 U.S.C. §§ 675(5)(C), (E); whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability").

would feel unsafe if he went to live with Mother and he does not see Mother as a protector. Indeed, Mother was aware that Child was being abused at Maternal Grandmother's home and failed to do anything to protect him. Conversely, the evidence demonstrated that Child is strongly bonded to his foster parents who are eager to adopt him and provide him with permanency. We perceive no reasonable basis on which to challenge the conclusion that termination of Mother's parental rights would be in Child's best interests.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/25/2023